## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| _____ ) | |
| NAIN ARDON, ) | |
| ) | |
| Plaintiff, ) | No. 22-562 |
| ) | |
| v. ) | Filed: October 29, 2024 |
| ) | |
| THE UNITED STATES, ) | Re-issued: November 12, 2024* |
| ) | |
| Defendant. ) | |
| _____ ) | |

## OPINION AND ORDER

Plaintiff Nain Ardon is employed as a correctional officer at a federal correctional facility operated by the Bureau of Prisons ("BOP"). On May 23, 2022, Plaintiff filed this action seeking compensation for time spent performing work before and after his shifts at a perimeter patrol post where he worked as a mobile patrol officer. *See* Pl.'s Compl., ECF No. 1. Plaintiff alleges that the Government failed to pay him and other similarly situated correctional officers working in a mobile patrol officer position for all hours worked in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

Pursuant to § 216(b) of the FLSA, Plaintiff now moves for conditional certification of a collective action consisting of all "current and former correctional officers who worked a perimeter patrol post in the position of 'mobile patrol officer'" during the period starting three years prior to the filing of the Complaint to the present. *See* Mot. for Conditional Cert. at 7, ECF No. 33. To that end, Plaintiff has also requested that the Court authorize a notice to be sent to potential plaintiffs. *See* Mot. for Approval of Notice Plan & Class Disc. ("Motion for Notice"), ECF No.

---

* The Court issued this opinion under seal on October 29, 2024, and directed the parties to file any proposed redactions by November 5, 2024. As the parties did not propose any redactions, the Court reissues the opinion publicly in full.

28. Additionally, Plaintiff has moved to strike exhibits attached to the Government's opposition to Plaintiff's conditional certification motion. *See* Pl.'s Mot. to Strike, ECF No. 44.

For the reasons articulated below, the Court **GRANTS** Plaintiff's Motion for Conditional Certification, **GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE** Plaintiff's Motion for Notice, and **DENIES AS MOOT** Plaintiff's Motion to Strike.

## I.    BACKGROUND

Plaintiff has been employed as a correctional officer at the Federal Correctional Institution in Victorville, California ("FCI Victorville") since 2009.  ECF No. 1 ¶ 6.  Plaintiff primarily worked as a mobile patrol officer, during which he was responsible for patrolling the outside of the prison complex.[1]  *Id.* ¶ 19.  Plaintiff alleges that he and other non-exempt mobile patrol officers are subject to a national policy requiring them to perform uncompensated work before and after their scheduled shifts, and that BOP has "a common policy of only paying for scheduled time rather than actual time worked." *Id.* ¶ 18; *see id.* ¶ 12.[2]  More specifically, Plaintiff alleges that mobile patrol officers are required to perform pre-shift and post-shift work, including vehicle inspections, change-of-shift briefings, equipment exchanges and inspections, and walking to and from the post. *Id.* ¶ 23.  According to the Complaint, most perimeter patrol posts at federal prison facilities are staffed for 16 or 24 hours and consist of two or three consecutive 8-hour shifts. *Id.* ¶¶ 14–15.  Further, Plaintiff alleges that there is no overlap among these shifts, and that mobile

---

[1]  Plaintiff uses the terms "mobile patrol officer" and "perimeter patrol officer" interchangeably.  *See* ECF No. 33 at 8.  The Government does not draw a distinction between the two, and instead refers to the officers as "correctional officers who have worked a perimeter patrol post."  *E.g.*, Def.'s Resp. to Mot. for Conditional Cert. at 8, ECF No. 38.  For clarity, the Court will refer to the officers as "mobile patrol officers."

[2]  Plaintiff's Complaint purports to attach "examples of pay records showing Defendant's illegal pay policy;" however, no such exhibit was attached.  ECF No. 1 ¶ 12.

patrol officers are paid only for the 8-hour shift for which they are scheduled, regardless of when the shift actually begins or how long the shift actually lasts. *Id.* ¶¶ 14–16.

The Court permitted Plaintiff to seek limited discovery narrowly related to the question of conditional certification—*i.e.*, whether similarly situated mobile patrol officers exist. *See* Scheduling Order, ECF No. 11. After that initial phase of discovery, the parties proposed a briefing schedule for Plaintiff's motion for conditional certification, which the Court adopted. Scheduling Order, ECF No. 24; Joint Status Report, ECF No. 23. Plaintiff has since filed three motions: (1) the Motion for Conditional Certification; (2) the Motion for Notice; and (3) a Motion to Strike. *See* ECF Nos. 33, 38, 44.[3] Plaintiff filed the first two motions contemporaneously, along with a notice of consent for 10 additional plaintiffs to join the suit. *See* Notice of Filing Consent to Join Wage Claim, ECF No. 25.

In the Motion for Conditional Certification, Plaintiff argues that he and other mobile patrol officers are similarly situated due to BOP's nationwide policies that (1) require the officers to arrive before their shift begins to receive and inspect equipment from the outgoing officer and to conduct a briefing, (2) mandate officers be paid only for scheduled hours (not hours actually worked), and (3) do not permit scheduling of overlapping shifts. ECF No. 33 at 9–11. The Motion for Notice dovetails with the Motion for Conditional Certification, requesting that the Court approve Plaintiff's Proposed Notice and Consent Form and permit dissemination by email, text, regular mail, electronic submission, and physical postings at federal correctional facilities. *See* ECF No. 28.

---

[3] The Court struck Plaintiff's initial motion for conditional certification due to a filing error. *See* Order, ECF No. 32. The Court also struck Plaintiff's initial motion to strike for failure to comply with Rule 7.3 of the Rules of the United States Court of Federal Claims ("RCFC"). *See* Min. Order (Mar. 12, 2024).

In support of his request for conditional certification, Plaintiff filed the transcript of the Government's Rule 30(b)(6) designee's deposition testimony, the Government's responses to written deposition questions served on the designee and on a random sample of 25 federal prison facilities, the job description for a correctional officer, and a table summarizing the average hand-off times at shift change as indicated in discovery responses submitted by the sample of prison facilities. *See* Table of Exhibits, ECF No. 33-1; *see also* Dep. Tr. of Ryan Taillon, ECF No. 37-1; Def.'s Resp. to Pl.'s Written Dep. Questions, ECF No. 37-2; Correctional Officer Job Description, ECF No. 33-15; Summary of Time Spent Performing Equipment Hand Off and Briefing from Sample of Prison Facilities, ECF No. 37-3.

Plaintiff also submitted 11 declarations, including his own. All declarants are current or former correctional officers who worked at federal correctional facilities spanning eight institutions and seven states. Five declarants, including Plaintiff, worked at FCI Victorville in California. *See* Decl. of Nain Ardon ¶ 2, ECF No. 33-4; Decl. of Juan Flores ¶ 2, ECF No. 33-5; Decl. of Michael McQueary ¶ 2, ECF No. 33-6; Decl. of Laura Medrano ¶ 2, ECF No. 33-7; Decl. of Richard Spring ¶ 2, ECF No. 33-14. The remaining six declarants worked in seven different facilities across six states. One declarant, Jerry Motley, worked at two facilities—one in Oakdale, Louisiana, and the other in Montgomery, Alabama. Decl. of Jerry Motley ¶ 2, ECF No. 33-9. Two declarants worked in Florida—Christopher Palomares at a facility in Sumterville, and Marlen Rodriguez at a facility in Coleman. Decl. of Christopher Palomares ¶ 2, ECF No. 33-10; Decl. of Marlen Rodriguez ¶ 2, ECF No. 33-11. As for the three remaining declarants, Lucas Meyer worked at a facility in Englewood, Colorado, Decl. of Lucas Meyer ¶ 2, ECF No. 33-8; Deon Scott worked at a facility in Memphis, Tennessee, Decl. of Deon Scott ¶ 2, ECF No. 33-12; and John Sida worked at a facility in Three Rivers, Texas, Decl. of John Sida ¶ 2, ECF No. 33-13.

4

The Government filed its Response on March 1, 2024, arguing that a collective action should not be conditionally certified and notice should not be approved.  *See* Def.'s Resp. to Mot. for Conditional Cert., ECF No. 38.  Attached to its Response are post orders[4] for the perimeter patrol post from four correctional facilities.  *See* Complex Mobile Patrol Post Orders, FCC Victorville, ECF No. 38-1; Mobile Patrol #1 Officer Post Orders, FCI McDowell, ECF No. 38-2; Mobile Patrol #1 Specific Duties Post Orders, FCI Englewood, ECF No. 38-3; Post Complex Mobile Specific Instructions, FCC Coleman, ECF No. 38-4.  Three of these post orders apply to facilities where declarants worked: FCI Victorville, FCI Englewood, and FCC Coleman.  *See* ECF Nos. 33-4, 33-5, 33-6, 33-7, 33-14 (FCI Victorville); ECF No. 33-8 (FCI Englewood); ECF No. 33-11 (FCI Coleman).  The fourth set of post orders applies to FCI McDowell, which was discussed in Mr. Taillon's testimony.  *See generally* ECF No. 37-1.

Plaintiff filed his Reply on March 8, 2024, and, shortly thereafter, moved to strike these exhibits.  *See* Pl.'s Reply to Mot. for Conditional Cert., ECF No. 41; ECF No. 44.  Though styled as a motion to strike, Plaintiff primarily argues that the Court may not consider the post orders submitted by the Government because it is improper to weigh competing evidence when deciding a motion for conditional certification and because the exhibits are inadmissible under the Federal Rules of Evidence.  *See* ECF No. 44 at 1–2.  The Government filed its Response on April 16, 2024, arguing that consideration of the post orders is both permissible and proper.  *See* Def.'s Resp. to Mot. to Strike, ECF No. 47.  Plaintiff filed his Reply on April 24, 2024.  *See* ECF No. 49.  The motions are ready for decision.

---

[4] Post orders provide officers with guidelines and instructions for working at that post.  *See* ECF No. 38 at 12–13.

## II.  LEGAL STANDARDS

Under the FLSA, "one or more employees for and in behalf of himself or themselves and other employees similarly situated" may "maintain [an action] against any employer (including a public agency) in any Federal or State court of competent jurisdiction."  29 U.S.C. § 216(b).  An action brought under this provision "on behalf of other employees is known as a 'collective action.'"  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).  "Similarly situated employees can become plaintiffs in a FLSA collective action lawsuit when they 'give [] [their] consent in writing to become such a party and such consent is filed in the court in which such action is brought.'"  *Gayle v. United States*, 85 Fed. Cl. 72, 77 (2008) (quoting 29 U.S.C. § 216(b)).

Though there are a variety of procedural approaches to collective actions, the Court has previously opted to follow the two-step certification procedure commonly used in this jurisdiction.  *Plaintiff No. 1 v. United States*, No. 20-454C, 2021 WL 1328609, at *1 (Fed. Cl. Apr. 9, 2021); *see Boggs v. United States*, 139 Fed. Cl. 375, 378 (2018) (remarking that "courts generally have applied a two-step approach" and collecting cases applying the two-step approach); *Valte v. United States*, 155 Fed. Cl. 561, 567 (2021) ("The most common approach to FLSA joinder proceeds in two steps."); *see also, e.g.*, *Smith v. United States*, 163 Fed. Cl. 155, 165 (2022); *Crawley v. United States*, 145 Fed. Cl. 446, 449 (2019); *Whalen v. United States*, 85 Fed. Cl. 380, 383 (2009).  At the first step, the court "may 'conditionally certify' a collective action based on a 'modest factual showing' that the named plaintiffs are similarly situated to a group of absent individuals."  *Valte*, 155 Fed. Cl. at 567 (quoting *Gayle*, 85 Fed. Cl. at 77).  That "certification" amounts to a determination that the plaintiff has met his burden to justify the distribution of "notice to absent individuals who appear to be similarly situated to the plaintiffs."  *Id.*

Although the FLSA does not define the phrase "similarly situated," the Supreme Court has held that employees are similarly situated when their claims share "common issues of law and fact

arising from the same alleged discriminatory activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Beyond that description, there is little agreement or precedential authority constructing the term.  *See, e.g.*, *Valte*, 155 Fed. Cl. at 569–70.  Broadly speaking, however, federal courts apply three different tests to determine whether putative plaintiffs are similarly situated. *See Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 766 n.4 (D.C. Cir. 2023); *Harris v. Med. Transp. Mgmt., Inc.*, No. 17-cv-01371, 2021 WL 3472381, at *3–4 (D.D.C. Aug. 6, 2021) [hereinafter *Harris I*].

Under the first formulation, the majority approach, courts employ a three-pronged "ad hoc" test that considers factors like the employment characteristics of the individual plaintiffs (*e.g.*, employment division, location, salaries, and other circumstances of employment), whether the defendant's defenses appear individualized to specific plaintiffs, and any other relevant factors. *See Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *Harris I*, 2021 WL 3472381, at *3.  The second approach, adopted only by a small number of district courts, *see Zavala*, 691 F.3d at 536, treats FLSA collective actions akin to class actions, applying the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure to determine whether to certify the collective action.  *See, e.g.*, *Shushan v. Univ. of Colo.*, 132 F.R.D. 263, 268 (D. Colo. 1990); *Harris I*, 2021 WL 3472381, at *3.  The final approach, developed more recently, asks whether the plaintiffs are "alike with regard to some *material* aspect of their litigation"—in essence, whether the "plaintiffs are alike in ways that matter to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018); *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020).  Although courts adopting the third framework warn against importing Rule 23 class-action principles into the FLSA context, *see Campbell*, 903 F.3d at 1115, the "materiality"

7

assessment bears some resemblance to the Supreme Court's standard for analyzing the class-action commonality requirement. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (holding that the "common contention" must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

At the second step of the certification procedure, the Government "may move to 'decertify' the collective action under a more stringent evaluation of whether its members are in fact similarly situated." *Valte*, 155 Fed. Cl. at 567 (quoting *Gayle*, 85 Fed. Cl. at 77–78). Because the parties by that stage have conducted discovery, a defendant's decertification motion may present evidence demonstrating that the collective-action plaintiffs are not similarly situated. *Gayle*, 85 Fed. Cl. at 77. Some courts describe the evidentiary burden at the decertification stage as akin to "a motion for partial summary judgment on the 'similarly situated' question." *Campbell*, 903 F.3d at 1109. If the court agrees to decertify the collective action, "the opt-in plaintiffs are dismissed without prejudice." *Valte*, 155 Fed. Cl. at 567. If the evidence the defendant cites fails to show that the plaintiffs are not similarly situated, then the collective action proceeds, at least "on the questions justifying collective treatment." *Campbell*, 903 F.3d at 1110.

As the Government highlights, the United States Court of Appeals for the Fifth Circuit has taken a variant approach to collective actions that eschews the concept of conditional certification. *See* ECF No. 38 at 8–12. Under that approach, courts must "rigorously scrutinize" the "realm" of potential plaintiffs and must find that the absent individuals are in fact similarly situated *before* notice can be sent. *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 434 (5th Cir. 2021). In *Swales*, the Fifth Circuit instructed that district courts should first determine what facts and legal issues are material to determining whether individuals are similarly situated, authorize preliminary

discovery accordingly, and then assess whether the evidence adduced supports the conclusion that threshold merits questions can be determined on a collective basis. *Id.* at 441–43.

Although the Court authorized Plaintiff to conduct some targeted discovery prior to moving for conditional certification, it nonetheless elects to follow the well-trodden path of the two-step inquiry. *See* ECF No. 11; *Boggs*, 139 Fed. Cl. at 378. Further, in determining whether Plaintiff has met his burden at step one to show that the putative plaintiffs are similarly situated, the Court's analysis adopts the "materiality" standard. Thus, the Court will assess whether correctional officers working in a mobile patrol officer role at other federal correctional facilities across the country are alike with respect to some material aspect of the litigation. *See Scott*, 954 F.3d at 516, 521. In other words, could joint proceedings resolve certain shared issues that will collectively advance the litigation of multiple FLSA claims by mobile patrol officers?

The Court emphasizes, however, that conditional certification does not amount to certification of a class action. Collective actions differ from class actions, as the former mechanism does "not bind absent individuals or enable named plaintiffs to control the litigation in the manner of class-action representatives." *Valte*, 155 Fed. Cl. at 567. As a general matter, class-action standards set too high a burden for FLSA plaintiffs to satisfy, and their application to FLSA actions is entirely unsupported by the text of the FLSA. *See Scott*, 954 F.3d at 520; *Valte*, 155 Fed. Cl. at 568–69. Further, conditional certification under the FLSA "does not produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare*, 569 U.S. at 75. The "sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Id.* (internal citations omitted).

### III. DISCUSSION

**A.    The Motion for Conditional Certification Is Granted.**

Plaintiff argues that the Court should certify a nationwide collective action on behalf of correctional officers who worked at perimeter patrol posts as mobile patrol officers.  *See* ECF No. 33 at 10; ECF No. 41 at 7–9.  Plaintiff argues that these officers are similarly situated because they have the same job title and responsibilities, and are subject to the same policies regarding pre- and post-shift activities.  ECF No. 33 at 7.  Although not specified in the proposed notice, Plaintiff's counsel clarified at argument that Plaintiff seeks to conditionally certify only three common claims of mobile patrol officers related to their time spent (1) walking to and from their post, (2) conducting a pre- or post-shift briefing, and (3) conducting an equipment exchange between the incoming and outgoing mobile patrol officer.  Oral Arg. Tr. at 52:14–56:16, ECF No. 52; *see also* ECF No. 33 at 15–21 (outlining alleged similarities, though omitting any discussion of walking to and from the perimeter post).  The Government responds that Plaintiff has not carried his burden because post orders for perimeter patrol posts, at least the ones submitted with its Response, do not require officers to arrive early to complete any pre-shift activities, nor has Plaintiff identified any universal policy imposing such a requirement.  ECF No. 38 at 12–17.

As explained above, the first step in the two-step approach to certification requires Plaintiff to make a modest factual showing that absent individuals are similarly situated with respect to their FLSA claims.  *Smith*, 163 Fed. Cl. at 165.  Plaintiff can meet his burden under that standard by demonstrating that the absent individuals "were together the victims of a single decision, policy, or plan."  *Whalen*, 85 Fed. Cl. at 384.  However, a single nationwide policy is not always necessary.  Plaintiff also can meet his burden by showing that BOP subjects absent individuals to a common employer practice, *i.e.*, correctional facilities similarly require mobile patrol officers to perform pre- and post-shift activities without pay.  *See Smith*, 163 Fed. Cl. at 173 (holding that a common

"policy" can be shown through "some common employer practice" (quoting 7 Newberg on Class Actions § 23:39 (5th ed.))); *id.* (noting that "[s]ome courts do not require a common policy at all, as long as there is other commonality" (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)); *Campbell*, 903 F.3d at 1116 ("A systemic policy is no less common across the collective if those subject to it are affected at different times, at different places, in different ways, or to different degrees."); *Harris v. Med. Transp. Mgmt.*, 317 F. Supp. 3d 421, 425 (D.D.C. 2018) ("[A]t this juncture, it is sufficient that the court can reasonably infer based on pleadings and affidavits that the failure to pay overtime is sufficiently widespread [across multiple transportation companies that contracted with Defendant] to justify preliminary certification."); *Zavala*, 691 F.3d at 538 (holding that "[b]eing similarly situated . . . mean[s] that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA").

Although Plaintiff must show that his position and claims are similar to other potential plaintiffs, he need not show they are identical. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) (quoting *Grayson*, 79 F.3d at 1096). To make this showing, Plaintiff may rely on "the pleadings, affidavits, and other available evidence." *Gayle*, 85 Fed. Cl. at 77. At this preliminary stage, courts generally do not "resolve factual disputes, decide substantive issues, or make credibility determinations." *Boggs*, 139 Fed. Cl. at 379 (quoting *Gayle*, 85 Fed. Cl. at 77); *see Whalen*, 85 Fed. Cl. at 386 ("[A]t this stage it would be improper to 'resolve a factual dispute' and 'decide a substantive issue going to the ultimate merits.'" (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007))).

When a plaintiff moves "for conditional certification on the basis of a company-wide policy, [the] plaintiff must provide an evidentiary basis for the existence of such a policy." *Gayle*, 85 Fed. Cl. at 78. Plaintiffs can satisfy this burden by pointing to deposition testimony of the

defendant's Rule 30(b)(6) designee regarding the defendant's practices. *Id.* at 78–79 (citing *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 849 (N.D. Ill. 2008)).  In addition, plaintiffs can provide evidence of the defendant's policy by introducing affidavit testimony from individuals who have worked for the defendant at various locations, and "demonstrat[ing] that the defendant had the same compensation policy at 'each location.'"  *Id.* at 79 (quoting *Goudie v. Cable Commc'ns, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394, at *6 (D. Or. Oct. 14, 2008)); *see, e.g.*, *Whalen*, 85 Fed. Cl. at 386.

Plaintiff relies on both forms of evidence to "provide an evidentiary basis for the existence" of the allegedly unlawful policies here. *Gayle*, 85 Fed. Cl. at 78.  The declarations submitted by Plaintiff universally state that BOP has a nationwide policy of paying mobile patrol officers only for their scheduled hours, and of scheduling shifts that do not overlap.  *See, e.g.*, ECF No. 33-4 ¶¶ 3, 5–6.  Each declarant states that they performed work without compensation due to BOP's "nationwide policy of only paying its correctional officers for the time they were scheduled to work instead of the time they *actually* performed work."  *E.g.*, *id.* ¶ 3 (emphasis in original).  The declarants further state that most "posts at the prison facilities are staffed for either 16 hours or 24 hours a day," and that BOP "assigns a correctional officer to the post for a scheduled 8-hour shift." *E.g.*, *id.* ¶ 5.  In addition, the declarants state that BOP does not schedule any overlap between those shifts, and that BOP only "pays for 8 hours even if the correctional officer performs work lasting longer than 8 hours."  *E.g.*, *id.*; *see id.* ¶ 6.  These statements are supported by the Government's written deposition responses, which confirm that all randomly sampled facilities with perimeter patrol posts do not schedule overlapping shifts.  *See* ECF No. 37-2 at 5–16.  The Government's Rule 30(b)(6) designee confirmed the same.  ECF No. 37-1 at 108:6–15, 143:3–13, 144:9–12.

More importantly, however, Plaintiff's evidence shows that mobile patrol officers across correctional facilities have similar incoming and outgoing shift-change procedures. Although these procedures are set at the facility level, not the national level, they are overlapping in several respects and thus support a finding of similarity. *Smith*, 163 Fed. Cl. at 173. More to the point, the commonality among the procedures may serve as a basis for Plaintiff to prove at the factfinding stage the existence of a common policy or practice or, at a minimum, actual or constructive knowledge of the facilities' alleged failure to pay overtime. *See* 29 C.F.R. § 785.11; *Campbell*, 903 F.3d at 1116. For example, the declarations all state that each shift change for a perimeter patrol post involves an equipment exchange, equipment inspection, and briefing. *See, e.g.*, ECF No. 33-4 ¶¶ 10, 12. The declarations represent that when an incoming mobile patrol officer relieves the outgoing officer from his or her post, the incoming officer "is required to make contact with the outgoing perimeter patrol officer." *E.g.*, *id.* ¶ 10. According to the declarations, mobile patrol officers are similarly required to have certain equipment, and the incoming officer "collects and inspects the equipment from the outgoing perimeter patrol officer." *E.g.*, *id.* ¶ 9; *see id.* ¶ 10.[5] Further, the incoming officer will "normally discuss what occurred during the prior shift with the outcoming officer," including "whether any disturbances occurred or suspicious activity transpired in the prior shift," as well as "any other security incidents." *E.g.*, *id.* ¶ 12.

These statements are likewise supported by the Government's written deposition responses, which confirm that for almost all the institutions sampled two officers spend at least some amount of time together at the perimeter post to exchange equipment and, in most cases, brief the incoming officer. *See* ECF No. 37-2. According to the declarations, officers spend

---

[5] "This equipment includes a pistol with nine-millimeter ammunition, a bulletproof vest, a duty belt, and a radio." *E.g.*, ECF No. 33-4 ¶ 9.

approximately 10 to 30 minutes engaged in these shift-change activities. *E.g.*, ECF No. 33-4 ¶ 14 (estimating the average time at 20 to 30 minutes); ECF No. 33-7 ¶ 14 (estimating the average time at 10 to 20 minutes). Among the prisons sampled, the estimated time for these activities was between one and 10 minutes, with an average of about five minutes. *See* ECF No. 37-3.

Additionally, Plaintiff provides evidence of similarities among job titles, responsibilities, and training. *See* ECF No. 33 at 15–16, 21. This evidence, taken alone, is insufficient to meet Plaintiff's burden. As the Government correctly notes, many conditional certification cases involve misclassification of employees as being non-exempt, and thus fact determinations regarding an employee's job duties are integral to the FLSA claim. *See* ECF No. 38 at 17; *see also, e.g.*, *Plaintiff No. 1 v. United States*, 139 Fed. Cl. 440, 442 (2018). But the highlighted similarities nonetheless provide some support for conditionally certifying a collective action here because Plaintiff's claim will depend, in part, on showing that any pre- and post-shift work is indispensable to the primary activities of a mobile patrol officer, which appear to be similar (if not essentially identical) across correctional facilities. *See* ECF No. 1 ¶¶ 59–60; ECF No. 33-15; ECF No. 37-2 at 5–16; ECF No. 38-1; ECF No. 38-2; ECF No. 38-3; ECF No. 38-4.

The Government primarily responds by arguing that both the statements made in Plaintiff's submitted declarations and his allegations regarding facility policies are inconsistent with the corresponding post orders, and therefore such statements and allegations cannot establish that Plaintiff and other officers are similarly situated. ECF No. 38 at 13–16. The post orders submitted by the Government do not expressly require officers to arrive early or stay late to conduct shift-change activities; with one exception discussed below, they are silent on the matter. *See* ECF No. 38-1; ECF No. 38-2; ECF No. 38-3; ECF No. 38-4. Setting aside Plaintiff's argument that the Court should not consider post orders at this juncture, the Government's arguments based on the

post orders are unavailing.  As Plaintiff correctly notes, the existence of lawful written policies does not negate the existence of unwritten policies or practices that *do* violate the FLSA.[6] *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 22 (W.D.N.Y. 2020) ("The existence of a formal, written policy does not mean the FLSA was not violated in practice.  To hold otherwise would allow employers to avoid FLSA liability simply by promulgating compliant handbooks and policies, regardless of their actual conduct." (quoting *Acevedo v. WorkFit Med. LLC*, No. 14-CV-06221-EAW, 2014 WL 4659366, at *5 (W.D.N.Y. Sept. 17, 2014))).  So, while the post orders for FCI Victorville, where Plaintiff works, do not explicitly require Plaintiff to arrive early to perform pre-shift work, Plaintiff (and several other declarants) allege that he and other officers had to do so all the same.  *See* ECF No. 1 ¶ 18.  Thus, any argument that post orders do not require early arrival does not negate the possibility of such a requirement as a matter of practice.

In any event, common sense dictates that, for at least some of the activities that are performed at shift change, two officers must be present simultaneously, regardless of whether the post orders expressly mention such a requirement.  Indeed, all the institutions with perimeter patrol posts sampled during discovery indicated that at least some amount of time is spent with two officers present at the post to exchange equipment and, in most cases, brief the incoming officer. *See* ECF No. 37-2.  The Government argues that these short amounts of time, ranging from one to 10 minutes according to the Government's deposition responses, are not compensable.  ECF No. 38 at 23; *see* ECF No. 37-3.  But that argument cuts to the merits of whether officers are entitled to compensation under the FLSA for this time, not whether Plaintiff and other officers are similarly situated with respect to their FLSA claims.  Further, Plaintiff has provided affidavit testimony that

---

[6] One set of post orders expressly reflects this principle, advising correctional officers that the orders "are to be used as guidelines" in addition to other available resources such as "any verbal instructions given by supervisors."  ECF No. 38-3 at 2.

certain officers' pre- and post-shift duties take longer than 10 minutes.  *E.g.*, ECF No. 33-4 ¶ 14; ECF No. 33-7 ¶ 14.  The Court declines to weigh competing factual evidence at this preliminary stage of the litigation.  *See, e.g.*, *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1106–07 (10th Cir. 2001) (explaining that a district court erred in decertifying a pattern-or-practice claim by "effectively" making factual findings relevant to the merits of plaintiffs' claim "in the guise of determining whether plaintiffs were 'similarly situated'"); *Gayle*, 85 Fed. Cl. at 77 ("[T]he court does not resolve factual disputes . . . ." (quotation omitted)).  For purposes of the materiality inquiry, the facts developed thus far tend to demonstrate common factual and legal issues about whether the shift-change activities allegedly performed by mobile patrol officers are *de minimis* and thus not compensable.

The Government's only evidence of a scenario where two officers would not have to be simultaneously present for a shift change is the post orders for FCI Coleman.  *See* ECF No. 38 at 22 (citing ECF No. 38-4 at 2).  According to those post orders, incoming officers do not make contact with the outgoing officers, and are instead required to gather and inspect equipment and perform a vehicle inspection during the scheduled shift.  *See id.*  To the extent that these post orders conflict with the representations made by Ms. Rodriguez in her declaration, the Court similarly declines to weigh such conflicting evidence at this stage.  *See Gayle*, 85 Fed. Cl. at 79.  Rather, the focus of the Court's inquiry is whether Plaintiff has provided enough evidence to meet the threshold for conditional certification.

Finally, the Government argues that the layouts of institutions vary significantly, such that Plaintiff is not similarly situated to other mobile patrol officers with respect to compensation for the time he spent walking to and from his post.  ECF No. 38 at 14–15.  The size and layout of each institution, the argument goes, impacts how long it takes for officers to reach the post and the

means by which they travel. *Id.* at 15. While variation among facilities and modes of transit might create some variation among potential plaintiffs' claims, the statute requires only similarity, not complete identicalness. *See Jirak*, 566 F. Supp. 2d at 849. Evidence of variation on this single point does not alter the Court's conclusion that Plaintiff has made a sufficient factual showing of similarity.[7] Because Plaintiff has already demonstrated that other officers are similarly situated with respect to the core of the FLSA claim at issue, differences in mode of and time spent in transit are insufficient to defeat conditional certification at this preliminary stage.

In sum, the Court concludes that Plaintiff has carried his burden to provide some evidence that other mobile patrol officers are similarly situated with respect to his FLSA claim. Plaintiff's evidence identifies three allegedly compensable shift-change activities that mobile patrol officers across facilities perform but for which they are not compensated. The reason they are not compensated—*i.e.*, BOP's pay and scheduling policies—is common to all mobile patrol officers. And whether each activity is compensable appears at this early stage to be a question susceptible to collective resolution since it is likely to turn on similar—or identical—evidence about BOP's employment practices. Accordingly, Plaintiff has carried his burden to justify distributing notice to potential plaintiffs who served as mobile patrol officers at federal correctional institutions nationwide and who were not paid, due to BOP's pay and shift-scheduling policies, for their time

---

[7] The same goes for the details of each facility's procedures. The evidence Plaintiff provides shows both commonalities and dissimilarities—for example, some mobile patrol officers may not receive an in-person briefing from the outgoing officer or they may receive the briefing from the Lieutenant instead, *see* ECF No. 37-2 at 7 (FCI Safford), *id.* at 9–10 (USP Tucson), and some mobile patrol officers do the equipment inventory after their shift starts instead of during the shift change, *id.* at 5–6 (FCI Lompoc), *id.* at 6–7 (USP Pollock). Although the Government is free to renew its challenge at the decertification phase based on material dissimilarities revealed during discovery, at this initial stage, the Court finds that Plaintiff's evidence of common practice is sufficient.

spent (1) walking to and from their post, (2) conducting a pre- or post-shift briefing, and/or (3) conducting an equipment exchange between the incoming and outgoing mobile patrol officer.

**B.    Plaintiff's Motion to Strike Is Denied as Moot.**

The Court next turns to Plaintiff's Motion to Strike the exhibits attached to the Government's Response to the Motion for Conditional Certification. *See* ECF No. 44. Though fashioned as a Motion to Strike, Plaintiff primarily objects to the Court's consideration of the post orders in deciding whether to conditionally certify a collective action. Plaintiff argues that considering the post orders at this stage is inappropriate because the orders are inadmissible under the Federal Rules of Evidence, and because the Court should not weigh competing evidence when deciding whether to grant conditional certification. *See id.* at 1–2.

For the reasons discussed above, the Court agrees that weighing competing evidence to resolve factual disputes, while not forbidden by the statute, is discouraged at this stage. *See supra* § II.A.2. There is, however, no need to strike the post orders from the docket. Because the Court holds that Plaintiff has carried his burden regardless of the content of the post orders, the Court denies the Motion to Strike as moot. *See Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 325 (E.D.N.Y. 2012).

**C.    Plaintiff's Motion for Notice Is Granted in Part, and the Parties Are Ordered to Jointly Submit a Revised Proposed Notice.**

Finally, because the Court has granted conditional certification, it proceeds to consider Plaintiff's proposed notice and attendant procedures. In general, the Court may supervise the collective action notice process through approval of the notice and notice procedures. *See Hoffman-La Roche*, 493 U.S. at 170–71. In doing so, the Court must maintain "judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. The purpose of the notice process in a collective action under § 216(b) of the FLSA "is

to provide potentially affected employees the opportunity to 'make informed decisions about whether to participate.'" *Whalen*, 85 Fed. Cl. at 387.

        1.    <u>Notice</u>

Plaintiff has filed a proposed Notice and Consent Form. The Court has no objections to the latter. The Court does, however, reject the proposed Notice as submitted. The parties are ordered to confer and propose a new Notice that addresses the Court's concerns and the concerns raised by the Government at oral argument. *See* ECF No. 52 at 47:25–49:17. The parties should ensure that the revised Notice reflects the following changes and any other changes the parties deem proper.

First, the parties should alter the headings and footings to clarify that, while the Court has approved the Notice, it has not endorsed the merits of this action. *See Gayle*, 85 Fed. Cl. at 81; *Whalen*, 85 Fed. Cl. at 389. Second, the parties should clarify that recipients of the Notice should not contact the Court or the Government with questions or requests for information regarding this litigation. *See Gayle*, 85 Fed. Cl. at 81. Third, the parties should narrow the collective-action definition to reflect the key factual and legal issues common to similarly situated plaintiffs in this litigation—*e.g.*, "TO: All current and former correctional officers who worked a perimeter patrol post in the position of 'mobile patrol officer,' also known as a 'perimeter patrol officer,' for the United States at any time from May 23, 2019, to the present, and who, due to the United States Bureau of Prison's alleged policies of scheduling consecutive shifts without overlap and paying officers only for scheduled hours, believe they were not compensated for time spent before and/or after their shift (1) walking to and from their post, (2) conducting a pre- or post-shift briefing with the incoming or outgoing officer, and/or (3) exchanging equipment with the incoming or outgoing officer." Fourth, the Notice should provide a more detailed account of the allegations in this

lawsuit, *i.e.*, a discussion of what the FLSA requires, a description of the alleged policies and common practices at issue, descriptions of the alleged FLSA violations in this case (the common characteristics of the proposed set of plaintiffs), and the proposed geographic scope. *See, e.g.*, *Whalen*, 85 Fed. Cl. at 390; *Barry v. United States*, 117 Fed. Cl. 518, 524–25 (2018).

The parties shall also confer to propose language in the Notice accurately describing potential plaintiffs' rights to join the lawsuit and any effects of joining the lawsuit. For example, the Notice should explain that potential plaintiffs may join the lawsuit by retaining the services of a lawyer of their choosing, not necessarily Plaintiff's counsel. *See Gayle*, 85 Fed. Cl. at 82–83. The Notice should also merely advise recipients of their right to be free of retaliation and should omit any direction to contact Plaintiff's counsel if they suspect any misconduct. *See* ECF No. 28-1 at 2. Such direction trends too much toward the "solicitation of claims" that the Supreme Court has forbidden in the collective-action context. *Hoffmann-La Roche*, 493 U.S. at 174; *see also Barry*, 117 Fed. Cl. at 523.

### 2.    Procedure

Pending submission of a revised proposed Notice, the Court provisionally approves Plaintiff's request to distribute notice by email, text, and regular mail, and for recipients to be able to execute consent forms online with an electronic signature service. *See* ECF No. 28 at 4–5. Recipients shall have 60 days from the mailing date to file their consent forms with the Court. *See id.* at 5. In addition, the Court grants Plaintiff's request to post copies of the Notice at facilities where BOP employed mobile patrol officers. *See id.* at 11.

Within 60 days of this order, the Government shall provide Plaintiff with the names, job titles, email addresses, mailing addresses, phone numbers, and dates of employment of individuals who were employs as mobile patrol officers within three years of the filing of the Complaint. The Court will not require the production of birth dates; that information is private and unnecessary to

notify potential plaintiffs.  *See Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 75 (E.D.N.Y. 2016)

("Courts are reluctant . . . to authorize disclosure of private information . . . without a showing that

the information is necessary for the plaintiff to notify potential opt-ins of the collective action.");

*Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 663 (S.D.N.Y. 2017).

## IV.  CONCLUSION

Plaintiff has made a modest factual showing that he and other correctional officers working

as mobile patrol officers are similarly situated with respect to their FLSA claims.  He has

sufficiently alleged that there are common factual and legal issues that are material to his and to

other putative plaintiffs' FLSA claims that may properly be resolved on a collective basis.

Accordingly, Plaintiff's Motion for Conditional Certification (ECF No. 33) is **GRANTED**.

Plaintiff's Motion for Notice (ECF No. 28) is **GRANTED IN PART AND DENIED IN PART**

**WITHOUT PREJUDICE**.  The parties shall confer and submit a revised proposed Notice

reflecting the requirements of this Order **by no later than November 12, 2024**.  Plaintiff's Motion

to Strike (ECF No. 44) is **DENIED AS MOOT**.

SO ORDERED.

Dated: October 29, 2024                          */s/ Kathryn C. Davis*
                                                         KATHRYN C. DAVIS
                                                         Judge